## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jeffrey Fidler, being duly sworn, do herby depose and say the following:

1. I am a special agent with Homeland Security Investigations ("HSI") and have been since 2008. I am assigned to the Intellectual Property Rights and Port Group ("IPR/Port Group") and my office is located at Logan International Airport, in Boston, Massachusetts. Prior to arriving in Boston in July 2015, I was assigned to the HSI Narcotics Smuggling Unit at the John Fitzgerald Kennedy International Airport, in New York City, New York. My primary duties and responsibilities in both New York City and Boston include investigating narcotics and contraband smuggling into the United Sates by commercial airline passengers. I have conducted or participated in numerous investigations into smuggling, and other illegal activities.

2. As set forth in this affidavit, there is probable cause to believe that Natalia Alexander Duran ("Duran"), DOB: XX/XX/1996, on May 30, 2017, in Boston, within the District of Massachusetts, smuggled goods into the United States, in violation of 18 U.S.C. § 545. Specifically, there is probable cause to believe that Duran knowingly arrived at Logan International Airport, in Boston, Massachusetts, aboard Jet Blue, flight 924, originating in Santiago, the Dominican Republic, with approximately 445 grams of cocaine concealed in her underwear.

3. This Affidavit is offered for the sole purpose of establishing probable cause for a criminal complaint charging Duran with a violation of 18 U.S.C. § 545 and does not contain all the facts and circumstances of which I am aware related to this investigation.

## Background

4. On May 30, 2017, Duran knowingly arrived at Logan International Airport, in Boston, Massachusetts, aboard Jet Blue, flight 924, originating in Santiago, the Dominican Republic, with approximately 445 grams of cocaine concealed in her underwear. Duran, a United States citizen, was referred for a secondary baggage examination.

5. Duran was examined in baggage secondary by Customs and Border Protection Officer ("CBPO") M. Carbone. Duran stated she previously resided at 4535 Barnett Street, Philadelphia, Pennsylvania (the address that appears on her Pennsylvania driver's license), but stated she moved to another address in Pennsylvania and could not remember that address. Duran also noted that while she was in the Dominican Republic, her mother moved to a new address in Yonkers, New York. She did not know the Yonkers address. Duran further stated that a relative was to pick her up at the airport in Boston that she planned to spend the night in Providence, Rhode Island, and then someone would drive her back to New York.

6. Duran's bags were examined and no contraband was found. CBPO Carbone attempted to identify the relative scheduled to pick up Duran at the airport. Duran stated that her sister-in-law was supposed to pick her up at the airport. When asked, Duran could not provide CBPO Carbone with her sister-in-law's phone number, but did give him her "WhatsApp" contact information. At this point, Duran requested to use the rest room. CBPO Carbone received authorization for a pat down of Duran from Supervisory Customs and Border Protection Officer ("SCBPO") C. Hughes. Two female CBPOs, CBPO M. Collado and CBPO M. Sacramone, were asked to conduct the pat down of Duran.

7. CBPO Collado and CBPO Sacramone attempted to escort Duran to a private room, where the pat down could be conducted in privacy. Before entering the private room, Duran stated she needed to use the rest room urgently. CBPO Collado and CBPO Sacramone escorted Duran to a restroom located beside the pat down room. They informed her that prior to using the toilet, she would have to undergo a pat down. CBPO Collado then attempted to pat down Duran, but Duran kept moving and repeatedly stated, "I need to pee, I'm going to pee myself, I haven't pees since 12 last night."

8. During the pat down, CBPO Collado felt an abnormality in Duran's groin area and CBPO Collado and CBPO Sacramone asked Duran about the abnormality. Duran claimed to be wearing three maxi pads. CBPO Collado began to pat down Duran's buttocks and she felt that Duran was wearing a body suit or faja (a spandex body suit). Duran began to become combative and protested that she was going to urinated on herself and she demanded that CBPO Collado and CBPO Sacramone leave the room so that she could urinate. CBPO Collado and CBPO Sacramone informed Duran that they would not leave the room. Duran then stated, "forget it I no longer need to use the rest room." Duran stated she was wearing a body suit and could not urinate with it on and did not want to remove it. At this point, Duran confessed she was concealing "stuff" inside of her body suit. CBPO Collado and CBPO Sacramone asked Duran what was inside her body suit. Duran admitted that someone gave her something to carry. When asked to identify the "stuff" she was referring to, she stated, "it is drugs." Duran began reaching into the groin area of her underwear and emptying handfuls of pellets onto the floor. CBPO Collado and CBPO Sacramone asked Duran if she had more and she began reaching into the buttocks area of her body suit and emptied out additional handfuls of pellets.

9. Duran removed 41 pellets from her groin and buttocks area. The gross weight of the pellets was approximately 445 grams. One of the pellets was subjected to two tests and both tests revealed the presence of cocaine.

## Conclusion

10. Based on the facts set forth herein, there is probable cause to believe that on or about May 30, 2017, in Suffolk County, within the District of Massachusetts, and elsewhere, Natalia Alexander Duran did knowingly import or bring into the United States, any merchandise contrary to law, in violation of Title 18, U.S.C. Section 545.

*JEFFREY FIDLER*
Special Agent

Sworn and subscribed to before me this 31th day of May, 2017

M. PAGE KELLY
United States Magistrate Judge